|  |  |
|---|---|
| Rodney Seamon, | No.: 24-CV-00082 NEB/ECW |
| Plaintiff, | |
| vs. | **MIDWEST BONDING, LLC'S** |
| | **MEMORANDUM OF LAW IN** |
| Midwest Bonding, LLC and Midwest Resale Specialist Inc., | **SUPPORT OF MOTION FOR** |
| | **SUMMARY JUDGMENT** |
| Defendants. | |

Defendant Midwest Bonding, LLC, ("Midwest Bonding") by and through its counsel of record, hereby submits this Memorandum of Law in Support of its Motion for Summary Judgment against Defendant Midwest Resale Specialist Inc. ("Midwest Resale").

## INTRODUCTION

Midwest Bonding and Midwest Resale entered into a contract wherein Midwest Resale was responsible for collecting Midwest Bonding's outstanding judgments when so requested from, and thereby expressly approved, by Midwest Bonding. Midwest Resale, without permission, began to attempt to collect outstanding judgments that Midwest Bonding never requested Midwest Resale to collect, including a judgment for Rodney Seamon ("Seamon"). Midwest Bonding did **not** request or authorize Midwest Resale to begin collections on Seamon's debt. Instead, Midwest Resale, unlawfully and without permission from Midwest Bonding, initiated collections proceedings against Seamon. As

a result of Midwest Resale's actions, Midwest Bonding has incurred liability, in the form of a ████ settlement payment to Seamon, and attorneys' fees and costs in this litigation.

Pursuant to Midwest Bonding's unambiguous contract with Midwest Resale, Midwest Resale **must** indemnify and hold harmless Midwest Bonding for Midwest Resale's own actions. There is no material issue of fact as to Midwest Resale's actions nor its responsibility to indemnify Midwest Bonding. Finally, Midwest Bonding's settlement with Seamon was reasonable as a matter of law.

Summary judgment is appropriate on Midwest Bonding's claim for contractual indemnity.

## FACTUAL BACKGROUND

The material facts are not in dispute. Midwest Bonding is a Minnesota bail bonds agent. (Compl. ¶ 5.) In 2019, Seamon paid his girlfriend's bail by incurring a debt with Midwest Bonding. (Compl. ¶ 8.) Seamon did not repay $2,500 of the debt he incurred in 2019. (Compl. ¶ 12.) This debt was subsequently classified as a consumer debt of Seamon. (Compl. ¶ 12.) Midwest Bonding does not collect its own consumer debts. Instead, it contracts with third-party collections agencies. (*See* Second Declaration of Ronald Blume ("Second Blume Decl.") Ex. A.)

Midwest Resale is a collection agency whose principal purpose is to purchase defaulted debts and seek to collect them. (Compl. ¶ 6.) Midwest Bonding and Midwest Resale entered into a contractual relationship on November 30, 2021, wherein Midwest Resale promised to collect upon Midwest Bonding's bail bond debts on its behalf. (Second

Blume Decl., Ex. A.) Contained within the contract between the parties is a mutual contractual indemnification provision, stating:

> [E]ach party agrees to indemnify and hold harmless the other party and its respective directors, shareholders, affiliates, officers, agents, employees, and permitted successors and assigns against any and all claims, losses, damages, liabilities, penalties, punitive damages, expenses, reasonable legal fees and costs of any kind or amount whatsoever, which result from or arise out of any act or omission of the indemnifying party, its respective directors, shareholders, affiliates, officers, agents, employees, and permitted successors and assigns that occurs in connection with this Agreement. This indemnification will survive the termination of this Agreement.

(Second Blume Decl., Ex. A.)

On October 16, 2023, Midwest Resale sent Midwest Bonding an email solicitation for Midwest Resale to collect on some of Midwest Bonding's outstanding judgments. (Declaration of Ronald Blume, signed November 12, 2024 ("First Blume Dec.") ¶ 2.) The solicitation attached a spreadsheet of judgments, including that judgment against Seamon. (First Blume Decl. ¶ 3.) Midwest Bonding did not respond to this solicitation **nor** authorize or approve Midwest Resale to collect on those outstanding judgments, including Mr. Seamon's. (First Blume Decl. ¶ 5, 6.)

Mr. Seamon filed for bankruptcy in August 2019. (Compl. ¶ 14.) His debt to Midwest Bonding was discharged in that proceeding. (Compl. ¶ 26.) However, in October 2023, Midwest Resale, without request or permission from Midwest Bonding, initiated collections proceedings against Mr. Seamon and made repeated demands for payment. (Compl. ¶ 20, 25, 26.) Midwest Resale made numerous phone calls to Seamon demanding payment, and issued a hard inquiry on Seamon's credit report. (Compl. ¶ 23, 27-29.) These

unlawful collection efforts were not authorized by Midwest Bonding in any way, and were the result of Midwest Resale's unilateral actions. (First Blume Decl. ¶ 5, 6.)

As a result of Midwest Resale's unlawful collection efforts, Mr. Seamon initiated the above-captioned lawsuit against Midwest Bonding, the original owner of the debt, and Midwest Resale. (*See generally*, Compl.) Because of the clear indemnification provision in the contract between Midwest Bonding and Midwest Resale, Midwest Bonding brought a crossclaim against Midwest Resale, alleging contractual indemnification and common law indemnification. (ECF 7, Midwest Bonding's Answer and Counterclaim at 9-10.)

On November 12, 2024, Midwest Bonding and Mr. Seamon entered into a binding settlement agreement and stipulated to dismiss Seamon's claims against Midwest Bonding. (ECF No. 58.) Midwest Bonding is entitled to indemnification from Midwest Resale for the settlement amount paid to Seamon, including Midwest Bonding's attorneys' fees and costs both in defending itself in the original suit brought by Seamon, and in pursuing its crossclaims against Midwest Resale.[1]

## **LEGAL STANDARD**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "To show a genuine dispute of material fact, a party must provide more than conjecture and speculation." *Zayed v. Associated Bank, N.A.,* 913 F.3d 709, 720 (8th Cir. 2009). A dispute is genuine if the evidence is such that a reasonable fact finder could return a verdict for the non-moving

---

[1] Midwest Bonding can submit an affidavit detailing its attorneys' fees and costs in this matter.

party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Further, a fact is "material" only if its resolution might affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "scintilla of evidence" to support the nonmoving party's position is not sufficient to make a dispute genuine; there must be enough evidence upon which a jury could base a verdict for the nonmovant. *Id.* at 252.

## ARGUMENT

**I.     It is Undisputed That a Contract Exists Between Midwest Bonding and Midwest Resale Requiring Midwest Resale to Indemnify Midwest Bonding.**

Under Minnesota law, contractual indemnification clauses are enforceable if they are: (1) not ambiguous; (2) do not release parties from intentional, willful, and wanton acts, and (3) do not violate public policy. *ACLU of Minnesota v. Tarek ibn Ziyad Academy*, 788 F. Supp. 2d 950, 967-68 (D. Minn. 2011) (citing *Myers v. Lutsen Mts. Corp.*, 587 F.3d 891, 894 (8th Cir. 2009)). To determine whether a contract violates public policy, the court considers "(1) whether there was a disparity of bargaining power between the contracting parties; and (2) the type of service being offered or provided through the contract." *Id*.

The indemnification clause in the contract between Midwest Bonding and Midwest Resale is clear and unambiguous. There is no doubt that the provision provides that the parties agreed to indemnification arising "out of any act or omission of the indemnifying party. . ." (Second Blume Decl. at Ex. A.) The indemnification clause is mutual – it does not release parties from their own willful or wanton acts. The indemnification clause between Midwest Bonding and Midwest Resale ensures that the parties are responsible and

liable for their **own** intentional actions. *Tarek ibn Ziyad Academy*, 788 F. Supp. 2d at 967-68.

Finally, the indemnification clause does not violate public policy. There is no disparity of bargaining power between Midwest Bonding and Midwest Resale. *Id.* Both are sophisticated businesses who work in the collections industry and are aware of the effects of agreeing to an indemnification provision. There is no public policy that prevents a bail bond agent and a debt collector from signing a contract with a mutual indemnification provision. *Id.* Indeed, the mutual indemnification provision should be encouraged by public policy as it ensures both parties take responsibility for their own acts and omissions. Pursuant to the above factors, the indemnification provision between Midwest Bonding and Midwest Resale is enforceable.

Midwest Resale does not and cannot dispute that it entered into a binding contract with Midwest Bonding and that that contract contained an indemnification provision. The contract speaks for itself. (Second Blume Decl. Ex. A.) Further, the indemnification provision in the contract between the parties is clearly enforceable under Minnesota law. Finally, Midwest Bonding's liability to Seamon arises from Midwest Resale's "act or omission," wherein it, without permission or authorization from Midwest Bonding, assumed responsibility for collecting Seamon's debt to Midwest Bonding. Midwest Resale **admits** that it attempted to collect on Seamon's debt. (*See* Declaration of Tess R. Olinger, Ex. A, Midwest Resale's Responses to Plaintiff's First Set of Discovery at 11, 12.) Midwest Resale did so without permission from Midwest Bonding. (First Blume Decl. ¶ 5, 6.) It is

clear from the undisputed facts of the case that Midwest Bonding had nothing to do with the unlawful collection of Seamon's debt.

Therefore, because there is no dispute as to any material fact regarding Midwest Bonding's contractual indemnification provision, Midwest Bonding is entitled to Summary Judgment on its contractual indemnification claim.

**II.     The Settlement Between Midwest Bonding and Seamon is Reasonable, Thus, Midwest Resale is Required to Indemnify Midwest Bonding.**

Indemnification is appropriate where an enforceable indemnification clause exists in the contract between the parties, even if there is no liability in the form of a verdict. *Jackson Nat'l Life Ins. Co. v. Workman Sec. Corp.*, 803 F. Supp. 2d 1006, 1012 (D. Minn. 2011) (citing *Miller v. Shugart*, 316 N.W.2d 729, 735 (Minn. 1982) (en banc)). "A reasonable and prudent settlement can trigger the duty to indemnify." *Id.*

"The test as to whether a settlement is reasonable and prudent is what a reasonably prudent person in the position of the [party seeking indemnification] would have settled for on the merits of the plaintiff's claim." *Glass v. IDS Fin. Servs. Inc.*, 778 F. Supp. 1029, 1084 (D. Minn. 1991) (citing *Miller*, 316 N.W.2d at 735). This involves "a consideration of the facts bearing on the liability and damage aspects of plaintiff's claims, as well as the risks of going to trial." *Id.* (citing *Miller*, 316 N.W.2d at 735).

"The party seeking indemnification need only show it **could have** been liable under the facts shown. . .not whether they **would** have been." *Id.* (citing *Osgood v. Med. Inc.*, 415 N.W.2d 896, 903 (Minn. Ct. App. 1987)). "Further, in the context of a contractual duty to indemnify, as opposed to a claim for contribution, when the parties have a written

indemnity contract, the actual liability requirement is superfluous." *Glass v. IDS Fin. Servs. Inc.*, 778 F. Supp. 1029, 1084 (D. Minn. 1991) (citing *Miller*, 316 N.W.2d at 735). The question regarding whether a settlement is reasonable is a question of law for the Court to determine. *Miller*, 316 N.W.2d at 735. As such, it is an appropriate question for this Court to determine on a Motion for Summary Judgment.

Here, Midwest Bonding entered into a binding settlement agreement with Seamon for ▆▆▆▆▆ (Second Blume Decl. Ex. B.) Because Midwest Bonding and Midwest Resale have a contractual indemnification agreement, Midwest Bonding need only show that it *could* have been found liable at trial, not that it actually *would* have been found liable. *See Glass*, 778 F. Supp. at 1084. Certainly, Midwest Bonding ***could*** have been found liable at trial based on the facts and circumstances of the case (though Midwest Bonding does not concede it **is** liable for Seamon's damages whatsoever), given that Midwest Bonding and Midwest Resale had a contractual relationship wherein Midwest Resale was to collect on Midwest Bonding's outstanding judgments. It is possible that a jury would have found Midwest Bonding liable for the 11 U.S.C. § 524 claim and the invasion of privacy/intrusion upon seclusion claim.

This settlement was reasonable based on Midwest Bonding's potential risk of being found liable at trial and the costs Midwest Bonding would have incurred as a result of defending the case. It is clear that a reasonably prudent party in Midwest Bonding's position would have chosen to settle for ▆▆▆▆▆ based on the merits of Seamon's claim against Midwest Bonding, rather than risk being found liable for a significantly higher amount at trial, **and** Seamon's attorneys' fees and costs, which alone are likely in excess

8

of ▮▮▮▮▮▮ Further, it is clear that, at the time of Midwest Bonding's settlement with Seamon, Seamon intended to plead punitive damages against both parties, as evidenced by his Motion to Amend the Complaint to Plead Punitive Damages filed against Midwest Resale after settlement. (ECF 54, 55.) As of November 12, 2024, the date of the settlement between Midwest Bonding and Seamon, Midwest Bonding was under the reasonable impression it might have been liable for punitive damages as well as actual damages and attorneys' fees, further demonstrating the reasonableness of the ▮▮▮▮▮ settlement.

In sum, Midwest Bonding's settlement with Seamon was reasonable and prudent under the circumstances. Had Midwest Bonding proceeded to trial, its potential liability far exceeded the ▮▮▮▮▮ for which it eventually settled with Seamon. Because the settlement was reasonable and prudent, Midwest Bonding is entitled to summary judgment on its contractual indemnification claim.

## **CONCLUSION**

Based upon the foregoing, Defendant Midwest Bonding respectfully requests that the Court grant its Motion for Summary Judgment on Count I, Contractual Indemnification and order that Midwest Resale indemnify Midwest Bonding for ▮▮▮▮▮ the amount Midwest Bonding paid to Seamon as a result of this lawsuit, as well as Midwest Bonding's attorneys' fees and costs both in defending the initial Complaint brought by Seamon, and in pursuing its crossclaim against Midwest Resale.

Dated:  February 3, 2025

WINTHROP & WEINSTINE, P.A.

By:  *s/Tess R. Olinger*

Joseph M. Windler, #0387758
Tess R. Olinger, #0403702

225 South Sixth Street
Suite 3500
Minneapolis, MN 55402
(612) 604-6400
jwindler@winthrop.com
tolinger@winthrop.com

***Attorneys for Defendant Midwest Bonding, LLC***

30766639v2

10